Argued and submitted August 9, 2005, reversed February 14, 2007

Steven MAGYAR,
*Petitioner-Respondent,*

*v.*

Stephanie WEINSTEIN,
*Respondent-Appellant.*

Lane County Circuit Court
180415707; A126213

153 P3d 135

Judson M. Carusone argued the cause for appellant. With him on the briefs was Bromley Newton LLP.

Michael A. Lewis argued the cause and filed the brief for respondent.

Before Edmonds, Presiding Judge, and Wollheim, Judge, and Collins, Judge pro tempore.

COLLINS, J. pro tempore.

**COLLINS, J. pro tempore**

Respondent[1] appeals after the trial court issued a permanent stalking protective order and a preceding temporary stalking protective order. She advances five assignments of error, only three of which we discuss here:

(1)   That the court lacked probable cause to issue a temporary stalking protective order;

(2)   That the court erred in concluding that a previously issued Family Abuse Prevention Act (FAPA), ORS 107.700 to 107.735, restraining order had been renewed and extended for an additional year; and

(3)   That petitioner did not offer sufficient evidence to support the issuance of a permanent stalking protective order.[2]

This court reviews the facts *de novo*. ORS 19.415(3); *Hanzo v. deParrie*, 152 Or App 525, 537, 953 P2d 1130 (1998), *rev den*, 328 Or 418 (1999).

Petitioner and respondent were involved in a domestic relationship for several years. They lived together in a house on Sorrell Way in Eugene and also invested together in a townhouse at 1500 Norkenzie #3 in Eugene. On June 2, 2003, respondent obtained a FAPA restraining order based on alleged abuse by petitioner. Petitioner was ordered to leave the Sorrell Way property and subsequently moved into the 1500 Norkenzie #3 townhouse.

The parties then litigated their domestic affairs, including ownership of the two parcels of real property, in Lane County Circuit Court. In May 2004, the court ruled that petitioner was the exclusive owner of the Sorrell Way property and that the Norkenzie townhouse was owned by the parties as tenants in common. Pursuant to the court's order,

---

[1] As is our usual practice, we refer to the parties by their designations below.

[2] Respondent also asserts that the court erred by concluding that a FAPA restraining order can be used to resolve property issues and that the court abused its discretion in providing that the stalking order would continue for an unlimited duration. The second issue was not preserved below. The first issue is not germane to any order on appeal in this case.

each party had the right to buy out the other within 60 days. If that did not occur, the property was to be placed on the market and sold. Meanwhile, petitioner continued to reside in the townhouse.

Pursuant to the May 2004 ruling, respondent vacated the Sorrell Way property and moved in with her father. Her father lived at 1500 Norkenzie #2, adjacent to the townhouse that the court had ruled was owned by the parties as tenants in common. In anticipation of respondent's move, the FAPA restraining order was modified in October 2003 so that petitioner would not be in violation as a result of respondent, the protected person in that order, moving in next door.

On August 20, 2004, petitioner applied for and obtained an *ex parte* temporary stalking protective order. Ten days later, a full hearing was conducted, and the court issued a permanent stalking protective order. Those two orders are the subjects of this appeal.

Respondent's first assignment of error pertains to the issuance of the temporary stalking protective order. That assignment of error is moot in light of the trial court's issuance of a permanent stalking order, which superseded the temporary order. The issue, therefore, is whether the permanent order was supported by sufficient evidence. Thus, we turn to respondent's arguments that the record is insufficient to support the issuance of a permanent stalking protective order and that the court should not have considered the previous FAPA order in granting the stalking protective order.

Pursuant to ORS 30.866(1), in order to obtain a permanent stalking protective order, a petitioner must prove the following by a preponderance of the evidence:

"(a) The person intentionally, knowingly or recklessly engages in repeated and unwanted contact with the other person or a member of that person's immediate family or household thereby alarming or coercing the other person;

"(b) It is objectively reasonable for a person in the victim's situation to have been alarmed or coerced by the contact; and

"(c) The repeated and unwanted contact causes the victim reasonable apprehension regarding the personal

safety of the victim or a member of the victim's immediate family or household."

At the August 30 hearing, petitioner established that respondent had, on June 28, 2004, and again on August 19, 2004, used a locksmith to gain entry into the Norkenzie #3 townhouse. Respondent testified that, on both occasions, she entered in order to assert her right as coowner to be on the property. She further testified that, at least in the case of the August entry, she intended to move in or at least move property there because she was in the process of having to move out of Norkenzie #2.

The first entry occurred at midafternoon on June 28. Respondent testified that, prior to the first entry, she believed that petitioner was not there and that he had, perhaps, even moved to the Sorrell Way property. The house appeared empty; petitioner was a traveling salesman, and respondent did not see his car in the driveway. As it turned out, petitioner *was* there. As the locksmith was unlocking the door, petitioner opened it. Respondent entered, confronted petitioner, and then sat in a chair near the door and refused to leave. There were no physical threats or contact. Respondent did not leave until the police were called to the townhouse and asked her to leave.

The second entry occurred around 9:30 p.m. on August 19. With respect to that entry, respondent again testified that she believed petitioner would not be there. When she pushed the door in to open it, it struck petitioner and bruised his arm. Petitioner grabbed respondent, and they fell to the floor. Other than the bruise to petitioner, there was no physical harm inflicted by respondent, and respondent made no threat of harm.

Respondent, however, again refused to leave and the police were again called to the townhouse. This time, respondent was arrested for trespass. The trespass arrest was based on petitioner's assertion to the police that he had a right to exclusive occupancy of the townhouse. Petitioner had further posted a "no trespassing" notice near the front door. Yet, neither the order in the domestic relations case nor any aspect of the FAPA order appears to have given petitioner the right to

exclude respondent, a coowner, from entering or remaining on the premises.[3]

The record reveals two other contacts that occurred between the parties in the months preceding petitioner's application for the stalking order. One occurred in early June, when respondent gave petitioner checks that were sent to her post office box. The other contact was initiated by petitioner and involved a discussion of the exchange of some DMV papers. Those contacts were neither unwanted nor threatening in any way.

On this record, we conclude that the evidence is insufficient to warrant a permanent stalking protective order. By entering the residence that had been exclusively occupied by petitioner, respondent, at the most, recklessly engaged in unwanted contact that alarmed him. But that is not enough to support a stalking protective order. Under ORS 30.866(1)(c), petitioner must prove that "[t]he repeated and unwanted contact cause[d] the victim reasonable apprehension regarding the personal safety of the victim or a member of the victim's immediate family or household." We conclude that, under the circumstances, petitioner did not prove that the contacts caused him a reasonable apprehension regarding his personal safety.[4]

It is not the location in this case but the circumstances of the contact that are important in determining whether the contact was unwanted and caused petitioner alarm and reasonable apprehension for his personal safety. There were no threats or physical confrontation on the first entry. The only physical interaction on the second entry was a result of respondent swinging open the door and petitioner grabbing her and falling to the floor with her. There is no history of violence or threats by respondent on other occasions prior to the entries that might contribute to a reasonable apprehension by petitioner for his physical safety. Petitioner acknowledges that respondent has never physically harmed

---

[3] In any event, for reasons discussed below, the FAPA order expired prior to the first entry.

[4] We note that petitioner answered in the affirmative when asked if he "feared physical injury in Ms. Weinstein's presence." But the question is whether, when weighed along with other evidence, that fear was objectively reasonable.

or threatened to harm him. There was testimony about vague threats like, "He's done for," but that statement was made to respondent's sister. There is no evidence that they were communicated to petitioner, and they therefore could not be a reason for petitioner to fear for his physical safety. In sum, the evidence establishes that respondent twice attempted to gain entry to the jointly owned townhouse at times that respondent believed that petitioner was not home. On one of those occasions, petitioner's arm was bruised when respondent swung the door open. That evidence does not establish that petitioner, as a result of the two unwanted and alarming contacts, reasonably feared for his personal safety.

In determining whether to issue the permanent stalking protective order, the trial court gave some weight to the existence of the June 2003 FAPA order. Although the FAPA order would have, pursuant to its original terms, expired June 2, 2004 (prior to either instance of unwanted contact), the trial court concluded that it had been extended by the May 2004 order declaring petitioner the owner of the Sorrell Way property. We disagree that the earlier FAPA order is relevant in this case for two reasons. First, the FAPA order was for respondent's protection, not petitioner's. Second, the May 2004 order merely modified the FAPA order to reflect the domestic relations court's ruling that petitioner was the exclusive owner of the Sorrell Way property and that respondent's ordered departure from that property meant that petitioner, now the clear legal owner, should no longer be restricted from going onto what had been declared to be his exclusive property. It did *not* renew the original FAPA order; it only modified it. The modification of the FAPA order was filed the same day as the judgment was signed, making petitioner the sole owner of the Sorrell Way property and declaring the parties to be tenants in common of the Norkenzie #3 townhouse. The May 2004 order contains no findings necessary for a court to renew the restraining order. ORS 107.725. In fact, there is no evidence that respondent *applied* to have the order renewed. The order merely continued the original FAPA order on its original terms and, under those terms, the order was to expire one year from June 2, 2003, well before the entries that petitioner asserts as the basis for the stalking order.

In sum, we conclude that the evidence in the record is insufficient to establish that petitioner reasonably feared for his personal safety under the circumstances of the unwanted contact with respondent. The trial court's decision is reversed.

Reversed.